UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOHN DOE,

                Plaintiff,

     -against-

STATE UNIVERSITY OF NEW YORK AT GENESEO, KEELY BIELAT SOLTOW, State University of New York at Geneseo College Registrar, LEONARD SANCILIO, State University of New York at Geneseo Dean of Students, NATE PIETROPAOLO, State University of New York at Geneseo Assistant Dean of Students for Student Conduct and Community Standards, ROBBIE ROUTENBERG, State University of New York at Geneseo Chief Diversity Officer and Investigator, and SARA MAHONEY, State University of New York at Geneseo Title IX Coordinator and Investigator,

                Defendants.

Civil Action No.:

# MEMORANDUM OF LAW

## IN SUPPORT OF THE PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

**E. STEWART JONES HACKER MURPHY LLP**

JULIE A. NOCIOLO, ESQ.
Pro Hac Vice Application Pending
*Attorney for Plaintiff John Doe*
28 Second Street
Troy, New York 12180
Tel. (518) 274-5820
jnociolo@joneshacker.com

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT……………………………………………………………4

STATEMENT OF THE CASE……………………………………………………………..4

FACTUAL BACKGROUND………………………………………………………………5

ARGUMENT……………………………………………………………………………….5

      A.      LEGAL STANDARD……………………………………………………….5

      B.      PLAINTIFF IS LEGALLY ENTITLED TO A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ENJOINING DEFENDANTS FROM UNLAWFULLY SUSPENDING HIM FROM GENESEO BECAUSE DEFENDANT ADJUDICATED PLAINTIFF UNDER AN UNLAWFUL UNIVERSITY DISCIPLINE PROCESS ……………………………………...…7

          1.      Plaintiff is Being Irreparably Harmed and will Continue to be Irreparably Harmed in the Absence of a Temporary Restraining Order and Preliminary Injunction…………………………………………………..…………………7

          2.      Plaintiff has Demonstrated a Likelihood of Success on the Merits of his Claims against Defendants……………………………………………………8

               a.      <u>Defendants violated Plaintiff's due process rights under the Fourteenth Amendment to the United States Constitution</u>…………………………………………………….8

                    i.      <u>Unlawful Adjudication under the Sexual Violence Response Policy</u>……………………………………………9

                    ii.      <u>Unlawful Adjudication of a Time Barred Complaint</u>…….12

                    iii.      <u>Sustaining a Violation Based on Insufficient Evidence & Failure to Consider New Evidence</u>……………………….13

               b.      <u>Geneseo breached its contract with Plaintiff and violated the covenant of good faith and fair dealing by failing to follow its own university policies and procedures</u> ……………………….16

          3.      The Balance of Equities Weighs in Plaintiff's Favor and Injunctive Relief is in Public Interest…………………………………………………………17

CONCLUSION………………………………………………………...……………………18

# **TABLE OF AUTHORITIES**

*Benisek v. Lamone*, 138 S.Ct. 1942 (2018)……………………………………………………7

*Goss v. Lopez*, 419 U.S. 565 (1975)……………………………………………………..9-10

*Citigroup Global Mkts, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30 (2d Cir. 2010)…………………………………………………………………………………..6

*Dalton v. Educational Testing Service*, 87 N.Y.2d 384 (1995)………………………………..18

*Diversified Mortg. Investors v. U.S. Life Ins. Co. of New York*, 544 F.2d 571 (2d Cir. 1976)…..6

*Doe v. Purdue Univ.*, 928 F.3d 652 (7th Cir. 2019)……………………………………9-10

*Eng v. Smith*, 849 F.2d 80 (2d Cir. 1988)………………………………………………..7

*Lynch v. City of N.Y.*, 589 F.3d 94 (2d Cir. 2009)…………………………………....…..7

*N. Am. Soccer League, LLC v. United States Soccer Federation, Inc.*, 883 F.3d 32 (2d Cir. 2018)………………………………………………………………………………..7

*Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105 (2d Cir. 2014)……………………………………………………………………………7, 17-18

*Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011)…….17-18

*Bhandari v. Trustees of Columbia Univ.*, 00-cv-1735, 2000 WL 310344 (S.D.N.Y. Mar. 27, 2000) …………………………………………………………………………………9

*Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206 (S.D.N.Y. 1998)……………………17

*Doe v. Univ. of Connecticut*, No. 3:20cv92 (MPS), 2929 WL 406356 (D. Conn. Jan. 23, 2020)……………………………………………………………………………..10

*Doe v. Univ. of N. Carolina Sys.*, No. 1:23-cv-41-MR, 2024 WL 925549 (W.D.N.C. Mar. 4, 2024)……………………………………………………………………………10

*Doe v. Rensselaer Polytechnic Institute*, 20-cv-1359 (BKS/CFH), 2020 WL 6544607 (N.D.N.Y. Nov. 6, 2020)……………………………………………………………………….6

*Doe v. Rensselaer Polytechnic Institute*, 18-CV-1374 (FJS/CFH), 2019 WL 181280 (N.D.N.Y. Jan. 11, 2019)……………………………………………………………………..7

*Doe v. Vassar Coll.*, 19-cv-9601 (NSR), 2019 WL 6222918 (S.D.N.Y. Nov. 21, 2019)………7

*Napierski v. Guilderland Democratic Cmte.*, 18-CV-846, 2018 WL 3546175 (N.D.N.Y. July 24, 2018)……………………………………………………………………………………..……..6

*Carr v. St. John's Univ.*, 17 A.D.2d 632 (2d Dep't), *aff'd*, 12 N.Y.2d 802 (1962)………..……..17

*Olsson v. Bd. of Higher Educ.*, 49 N.Y.2d 408 (1980)……………………………….....……17

*Vought v. Teachers Coll., Columbia Univ.*, 127 A.D.2d 654 (2d Dep't 1987)………………....…17

<u>Other Authority</u>

Fed. R. Civ. P. Rule 65……………………………………………………………………*passim*

**PRELIMINARY STATEMENT**

The plaintiff JOHN DOE,[1] by and through his attorneys E. Stewart Jones Hacker Murphy LLP, submits this memorandum of law in support of plaintiff's motion for a preliminary injunction and temporary restraining order. For the reasons set forth below, the Court should grant plaintiff's motion.

**STATEMENT OF THE CASE**

John Doe is a student at the State University of New York at Geneseo (hereinafter "Geneseo") and in his final semester of undergraduate study. John Doe has no disciplinary history with Geneseo. Doe was days away from completing his coursework for his Geology degree and only nineteen (19) days away from his graduation before defendants upheld a finding of responsibility for sexual assault and imposed a sanction of a one-semester suspension and a transcript notation.

Defendants' disciplinary process violated plaintiff's rights under the Fourteenth Amendment of the United States Constitution as well as his contractual rights with Geneseo in three ways.

<u>First</u>, defendants improperly adjudicated the allegations against plaintiff under its Sexual Violence Response Policy rather than the more procedurally robust Title IX Grievance Policy.

<u>Second</u>, even in applying the Sexual Violence Response Policy, defendants failed to follow its procedures by adjudicating a time barred complaint against plaintiff.

<u>Finally</u>, defendants failed to adhere to its Student Bill of Rights affording plaintiff a fair hearing because defendants sustained a violation based on insufficient evidence and failed to consider plaintiff's proffered new evidence.

---

[1] "John Doe" is a pseudonym. Plaintiff simultaneously filed a Motion to Proceed under a Pseudonym Pursuant to Rule 10(a) of the Federal Rules of Civil Procedure, which is pending before the Court.

These three errors by defendants are violations of his guaranteed due process rights and breaches of contract as well as breaches of the covenant of good faith and fair dealing that cause Doe concrete and immediate irreparable harm that cannot be remedied by a later permanent injunction or monetary damages.

## FACTUAL BACKGROUND

Plaintiff respectfully incorporates and directs the Court to the factual allegations in the Complaint and to the Declaration of John Doe containing supporting exhibits.

## ARGUMENT

**A.     THE LEGAL STANDARD FOR INJUNCTIVE RELIEF.**

Rule 65 of the Federal Rules of Civil Procedure governs both temporary restraining orders and preliminary injunctions. *See* Fed. R. Civ. P. Rule 65. "In the Second Circuit, the standard for issuance of a temporary restraining order is the same standard as the standard for a preliminary injunction." *Doe v. Rensselaer Polytechnic Institute*, 20-cv-1359 (BKS/CFH), 2020 WL 6544607 at *5 (N.D.N.Y. Nov. 6, 2020) (hereinafter "*RPI*"). "The purpose of a preliminary injunction is to maintain the status quo pending a final determination on the merits." *Diversified Mortg. Investors v. U.S. Life Ins. Co. of New York*, 544 F.2d 571, 576 (2d Cir. 1976).

In proceedings challenging a university's determination in a student conduct matter, the injunctive relief requested is prohibitory in order to "'maintain the status quo pending resolution of the case.'" *RPI*, 2020 WL 6544607 at *5 (quoting *N. Am. Soccer League, LLC v. United States Soccer Federation, Inc.*, 883 F.3d 32, 36 [2d Cir. 2018]). The movant's burden for a prohibitory injunction is to "show a greater than fifty percent probability of success." *Citigroup Global Mkts, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 34-35 (2d Cir. 2010). Thus, relief may be warranted even though there remains "considerable room for doubt"

about whether the plaintiff will ultimately prevail. *Eng v. Smith*, 849 F.2d 80, 82 (2d Cir. 1988). Courts have interpreted the status quo as "the last actual, peaceable uncontested status." *Id.* In university disciplinary cases, courts have routinely found that the status quo is "the moment before [a student] [p]laintiff's suspension was imposed." *Doe v. Vassar Coll.*, No. 19-cv-9601 (NSR), 2019 WL 6222918, at *4 (S.D.N.Y. Nov. 21, 2019).

"A party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that the preliminary injunction is in the public interest." *N. Am. Soccer League, LLC*, 883 F.3d at 37; *see also Benisek v. Lamone*, 138 S.Ct. 1942, 1944 (2018).

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision in the merits can be rendered." *Doe v. Rensselaer Polytechnic Institute*, No. 1:18-CV- 1374 (FJS/CFH), 2019 WL 181280, at *2 (N.D.N.Y. Jan. 11, 2019) (internal quotations and citations omitted). The Second Circuit has held that preliminary relief should be granted "where a plaintiff demonstrates 'irreparable harm' and meets one of two related standards: 'either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.'" *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (quoting *Lynch v. City of N.Y.*, 589 F.3d 94, 98 (2d Cir. 2009) (internal quotation marks omitted)). "A balance of equities tipping in favor of the party requesting [injunctive relief] means a balance of the hardships against the benefits." *Napierski v. Guilderland Democratic Cmte.*, No. 18-CV-846, 2018 WL

3546175, at *2 (N.D.N.Y. July 24, 2018).

B.  **PLAINTIFF IS LEGALLY ENTITLED TO A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ENJOINING DEFENDANTS FROM UNLAWFULLY SUSPENDING HIM FROM GENESEO BECAUSE DEFENDANTS ADJUDICATED PLAINTIFF UNDER AN UNLAWFUL DISCIPLINARY PROCESS.**

   1.  **Plaintiff is Being Irreparably Harmed and will Continue to be Irreparably Harmed in the Absence of a Temporary Restraining Order and Preliminary Injunction.**

There can be little doubt that Doe's suspension nineteen (19) days before his undergraduate graduation is irreparable harm.

The plaintiff has invested hard work and tuition dollars in obtaining a degree from Geneseo—an institution that induced him to study there (instead of at other colleges) with the promise of a top tier education and prestigious credentials upon graduation. The direct instruction from the plaintiff's professors—which he is denied during this suspension—is invaluable and irreplaceable. Indeed, that is precisely what Geneseo sells. Anyone can read books about geology, biology, and the other subjects of the plaintiff's study. But the benefit of a *Geneseo education* is instruction from *Geneseo faculty*. Every day lost of Geneseo faculty interaction is a day he will never get back. This is a unique benefit for which money damages are a poor and clumsy substitute.

Moreover, the interruption of Doe's coursework jeopardizes his scheduled completion of his undergraduate degree. But for Geneseo's suspension of Doe's Spring 2024 semester, he would have graduated a mere seventeen (16) days from today on Saturday, May 18, 2024. (*See* Doe Decl. ¶ 4). Plaintiff is days away from completing all coursework to earn his degree. (*See id.*) Without preliminary injunctive relief from this Court, plaintiff will be required to explain a gap in his resume and, even more so, why he did not graduate with the Class of 2024.

Furthermore, plaintiff has already obtained postgraduation full time employment in his chosen profession, which is scheduled to begin on or about June 17, 2024. (*See* Doe Decl. ¶ 9 & Exh. A). Without preliminary relief from this Court, he will be required to explain his unlawful suspension to his employer likely disqualifying him from his promised employment. Defendant's discipline requires Doe to forfeit the benefit of the work he already performed this semester and interrupts Doe's journey on his professional career path.  *See Bhandari v. Trustees of Columbia Univ.*, 00-cv-1735, 2000 WL 310344, at *5 (S.D.N.Y. Mar. 27, 2000) (finding irreparable harm where the plaintiff was suspended midway through the semester and would lose "the benefit of the work he has already performed this semester"); *see also RPI*, 2020 WL 6544607 (same). Doe's sacrifice of both time and opportunity cannot be returned to him through money damages or a permanent injunction following a decision on the merits. The harm he faces is concrete and immediate.

**2.   Plaintiff has Demonstrated a Likelihood of Success on the Merits of his Claims against Defendants.**

a.   <u>Defendants violated Plaintiff's due process rights under the Fourteenth Amendment to the United States Constitution.</u>

Students facing disciplinary proceedings by a public university and a suspension that "could seriously damage the students' standing with their fellow pupils and their teachers as well as interfere with later opportunities for higher education and employment" receive the protections of the Due Process Clause. *Goss v. Lopez*, 419 U.S. 565, 574-75 (1975). Courts have routinely found that students accused of sexual assault in a university disciplinary proceeding have a protected property interest entitling them to the procedural protections under the Due Process Clause. *See, e.g.*, *Doe v. Purdue Univ.*, 928 F.3d 652, 661-63 (7th Cir. 2019); *Doe v. Univ. of N. Carolina Sys.*, No. 1:23-cv-41-MR, 2024 WL 925549, at *9-10 (W.D.N.C. Mar. 4, 2024); *Doe v.*

*Univ. of Connecticut*, No. 3:20cv92 (MPS), 2929 WL 406356, at *3-5 (D. Conn. Jan. 23, 2020).

While procedural protections under the Due Process Clause are necessarily flexible, *see Winnick v. Manning*, 460 F.2d 545, 549 (2d Cir. 1972), "as the interest at issue becomes of more importance to the party at risk of deprivation, the procedural protections required become increasingly robust," *Univ. of N. Carolina Sys.*, 2024 WL 925549, at *9. Indeed, the Second Circuit suggested that in a case turning on "a problem of credibility, cross-examination of witnesses might [be] essential to a fair hearing." *Winnick*, 460 F.2d at 550. Certainly, a university's deviations from its own policies and procedures, which impact the fundamental fairness of a disciplinary proceeding violates the Due Process Clause. *See Goss*, 419 U.S. at 574; *Purdue Univ.*, 928 F.3d at 663.

Here, the process that plaintiff received before he was found responsible and suspended was constitutionally inadequate because defendants failed to follow Geneseo's policies, which impacted the fundamental fairness of the disciplinary proceeding. Defendants violated Geneseo's own polices in three ways. First, defendants improperly adjudicated the allegations against plaintiff under its Sexual Violence Response Policy rather than the more procedurally robust Title IX Grievance Policy. Second, even in applying the Sexual Violence Response Policy, defendants failed to follow its procedures by adjudicating a time barred complaint. Finally, defendants failed to adhere to its Student Bill of Rights affording plaintiff a fair hearing because defendants sustained a violation based on insufficient evidence and failed to consider plaintiff's proffered new evidence.

All of the above conduct impacted the fundamental fairness of the disciplinary hearing and ultimately deprived plaintiff of his guaranteed due process rights.

1. <u>Unlawful Adjudication under the Sexual Violence Response Policy</u>

On May 11, 2023, plaintiff was notified via emailed letter that a formal complaint was filed

against him "according to SUNY Geneseo's Title IX Grievance Process," and the letter included a link to Geneseo's Title IX Grievance Policy at https://www.geneseo.edu/policy/title-ix-grievance-policy. (*See* Doe Decl. ¶ 12 & Exh. B). Plaintiff then participated in the investigative interview with defendant co-investigators Mahoney and Routenberg and provided the names of witnesses he asked to be interviewed as part of their investigation. (*See* Doe Decl. ¶¶ 13-14). Thereafter, plaintiff was notified via emailed letter on September 25, 2023 that the case was being removed from the Title IX Grievance Policy to the Sexual Violence Response Policy. (*See* Doe Decl. ¶ 17 & Exh. C). Specifically, the letter indicated that "the Title IX Coordinator has determined the conduct, as alleged, does not meet the definition of 'sexual harassment' under the Title IX Grievance Process because:

> "*The conduct is alleged to have occurred outside the institution's education program or activity
>
> *It was learned through the investigation that the alleged incident wasreported to have occurred on Court Street, Geneseo NY at an off campus party. In light of this finding, the process is being moved from the Title IX Grievance Policy to the Sexual Violence Response Policy."

Doe Decl., Exh. C.

Before receiving this letter, plaintiff and his advisor had a meeting with defendant Nathaniel Pietropaolo, the Assistant Dean of Students for Student Conduct & Community Standards, who indicated that a hearing would be held under Geneseo's Sexual Violence Response Policy. (*See* Doe Decl. ¶ 16). Pietropaolo indicated that Geneseo's Title IX Grievance Policy did not apply because the alleged incident occurred off campus. (*Id.*). At this meeting, Pietropaolo indicated that an appeal of the governing policy could be taken in an appeal of a hearing board's decision following a hearing. (*Id.*). Plaintiff reserved his right to challenge this determination in his posthearing appeal and subsequently did so. (*See* Doe Decl. Exh. E).

11

It is readily apparent that the Title IX Grievance Policy affords more procedural protections to both a reporting party and a responding party. Chiefly, the Title IX Grievance Policy allows the parties' advisors the opportunity to cross examine the opposing party and other witnesses. (*See* Doe Decl., Exh. H at 16). This procedure is not available under SUNY Geneseo's Sexual Violence Response Policy, which incorporates the Student Code of Conduct procedures. (*See* Doe Decl. Exhs. I at 21-22 & J at 17).

Defendants erred by adjudicating this complaint under the Sexual Violence Response Policy rather than the Title IX Grievance Policy. The fact that the allegations occurred off campus does not automatically deem the conduct outside of the institution's education program or activity. Rather, the U.S. Department of Education's regulations explain that an "'education program or activity' includes locations, events, or circumstances over which the recipient exercised substantial control over both the respondent and the context in which the sexual harassment occurs, and also includes any building owned or controlled by a student organization that is officially recognized by a postsecondary institution." 34 C.F.R. § 106.44.

Here, the location of the alleged conduct occurred at Geneseo's men's rugby's off campus house. (*See* Doe Decl. Exh. G at 2). Men's rugby is a recognized club sport by Geneseo. See "Geneseo Men's Rugby-Football Club," available at https://www.geneseo.edu/mens_rugby (last visited March 1, 2024). Evidence elicited during the hearing and the investigation confirmed that respondent's home was the established men's rugby house for the 2022-2023 school year where all events hosted by men's rugby took place. (*See* Doe Decl. Exh. G at 2). Moreover, the conduct alleged took place during a prescheduled event of two SUNY Geneseo club teams: men's and women's rugby. (*See id.*) Jane Roe, the reporting party, is a member of the women's rugby team. (*See id*.) These factors dictate that defendants had control over the event sufficient to deem it an

"education program or activity," which is governed by federal Title IX law and requires adjudication of a sexual harassment complaint arising from this event under the university's Title IX Grievance Policy.

Indeed, the Student Conduct Appellate Board who adjudicated plaintiff's appeal agreed that "the case likely should have stayed under the purview of the Title IX Grievance Policy." (Doe Decl. Exh. G at 2).

Accordingly, defendants erred by adjudicating Jane Roe's complaint under the Sexual Violence Response Policy rather than the more procedurally robust Title IX Grievance Policy. This decision prevented plaintiff from exercising his rights to have his advisor cross examine the other party and witnesses. Defendants' error in opting for a policy with fewer procedural protections materially impacted the fundamental fairness of the disciplinary hearing and ultimately deprived plaintiff of his guaranteed due process rights.

2. <u>Unlawful Adjudication of a Time Barred Complaint</u>

Geneseo's Sexual Violence Response Policy states that "[c]onduct proceedings are governed by the procedures set forth in the SUNY Geneseo handbook . . . as well as federal and New York State law, including the due process provisions of the United States and New York State Constitutions." (Doe Decl. Exh. I at 21-22). Under Article V of the Student Code of Conduct, it states the following:

> "Any member of the College community may file a complaint against any student for misconduct. A complaint shall be prepared in writing and directed to the Dean of Students or their designee. Any complaint should be submitted as soon as possible and **no later than six months after the event takes place.** The Dean of Students may waive the six-month limitation when a late submission is reasonable."

(Doe Decl. Exh. J at Art. V [1] [emphasis added].)

Here, Jane Doe, the reporting party, confirmed her intent to pursue SUNY Geneseo's formal investigative process on May 1, 2023. (*See* Doe Decl. Exh. G at 3). Plaintiff was not notified of the allegation until May 11, 2023. (*See* Doe Decl. ¶ 12 & Exh. B). The sexual assault was alleged to have occurred on September 18, 2022. (*See* Doe Decl. Exh. B). Over seven months elapsed before Jane Roe pursued Geneseo's formal investigative process and before plaintiff was ever informed of the allegations. Seven months is beyond the six-month statute of limitations mandated in Geneseo's Student Code of Conduct. (Doe Decl. Exh. J at Art. V [1].) Further, the Dean of Students never waived the statute of limitations in this case. (Doe Decl. Exh. G at 3).

Despite the mandated statute of limitations contained in the Student Code of Conduct, defendants nevertheless adjudicated a time barred complaint against plaintiff. Defendants' error certainly impacted the fundamental fairness of the disciplinary hearing by prosecuting a time barred complaint against plaintiff in violation of his guaranteed due process rights.

3. <u>Sustaining a Violation on Insufficient Evidence & Failing to Consider New Evidence</u>

Under Geneseo's Sexual Violence Response Policy, "[a]ll students have the right to participate in a process that is fair, impartial, and provides adequate notice and a meaningful opportunity to be heard." (Doe Decl. Exh. I at 11). Evidence is evaluated under the preponderance of the evidence standard. (*See id.* at 6). Defendants violated this policy by sustaining a violation against plaintiff based on unreliable and insufficient evidence and by failing to consider newly discovered evidence following the hearing.

The student conduct board credited the reporting party despite inconsistencies with her investigative interview and the statements of other witnesses. In its decision, the student conduct board stated that it "did not find any significant level of inconsistencies that they found would influence the credibility afforded to either side." (Doe Decl. Exh. D at 7). The student conduct

board went on to say that the text messages from that evening with a one witness and Snapchat conversation between the parties months later tended to corroborate Jane Roe's claim that she was intoxicated to the point where her memory was impacted. Ultimately, the student conduct board found that "[b]ecause they found the R.I. credible, and they believe that she was likely intoxicated to the point that impacted her memory to such a high degree, she was more likely than not intoxicated to the degree that would constitute incapacitation under the College's definition." (Doe Decl. Exh. D at 8).

By crediting Jane Roe, the student conduct board necessarily dismissed John Doe's credibility. The student conduct board rationalized this determination stating that "[d]uring the hearing, [John Doe] indicated that [John Doe] believe you had worn a condom, but [John Doe] didn't remember how [he] 'finished.' There was a lack of detailed offered regarding the specific sexual acts performed, how they were performed, and to what extent." (Doe Decl. Exh. D at 7). However, at the hearing, plaintiff was never asked any questions by the hearing board to elaborate on the purported lack of detail surrounding the sexual activity between the parties. (*See* Doe Decl. ¶ 19). Jane Doe and other witnesses, including those who Jane Doe identified as witnesses, had contradicting accounts of the type, quantity, and time that the reporting party consumed alcohol. (*See* Doe Decl. Exh. D at 4-7). This is particularly concerning in this case where, as the student conduct board stated, "the Board found that their decisions were highly dependent on how intoxicated they believed the R.I. was on the night in question." (*Id.* At 7-8). Significantly, the hearing board never identified when the reporting party became incapacitated and how the respondent should have objectively known that the reporting party was incapacitated. (*See* Doe Decl. Exh. D). Failure to present evidence of the type, quantity, and time alcohol was consumed fails to meet the necessary preponderance of the evidence standard to find that the reporting party

was incapacitated to the point where she could not consent to sexual activity.

Moreover, it appears that the student conduct board scrutinized plaintiff's testimony under a more stringent standard than the Jane Roe's testimony. Courts have found that a university may demonstrate illegal bias when it holds one party's testimony to a higher standard than another party's testimony. *See Doe v. Rensselaer Polytechnic Institute*, 20-cv-1185, 2020 WL 6118492, at *8 (N.D.N.Y. Oct. 16, 2020) ("[W]here the allegations are so inherently intertwined and the female's complaint is accepted, flaws and all, while the male's complaint is rejected for having similar flaws, that discrepancy lends force to the conclusion that the difference is traceable to gender discrimination."). Plaintiff submits that this was the case here, and defendants' imposition of a sanction based on such insufficient and unreliable evidence demonstrates a violation of his guaranteed due process rights.

Additionally, Geneseo's Student Code of Conduct provides appeals may be based on new evidence sufficient to alter a decision that was not known at the time of the hearing. (*See* Doe Decl. Exh. J at 27). Here, defendants failed to allow plaintiff's new evidence to be considered by a fact-finding panel in violation of their own policy.

Plaintiff enclosed a signed and notarized affidavit of witness MC with his appeal submission. (*See* Doe Decl. ¶ 21 & Exh. F). In the affidavit, witness MC explains that Jane Roe approached him at a party in November 2022 and asked him "if anyone knows she slept with [John Doe]." At the time Jane Roe asked this to witness MC, she "never raised any question about whether it happened, it was stated as a fact" and she "never mentioned any wrongdoing on the part of [John Doe]." In his appeal, John Doe stated that "[t]his evidence could alter the outcome of the hearing because, if credited, it would undercut the testimony of [Jane Roe] that she did not know she had sex with [John Doe] until confirming it with him via Snapchat in April 2023." (*See* Doe

Decl. Exh. E at 4).

Rather than remand the case to the student conduct board to consider witness MC's testimony, the student conduct appellate board held "the Board failed to find this statement, even if true, provided significant information that would alter the decision of the hearing." (Doe Decl. Exh. G at 4). The student conduct appellate board failed to provide a sufficient rationale for dismissing plaintiff's proffered witness. Defendants failure to allow plaintiff to present this witness also violated his guaranteed due process rights, which impaired the fundamental fairness of the disciplinary proceeding against him.

Based on the above separate and distinct violations of his protected due process rights, plaintiff has demonstrated a likelihood of success on the merits or, at the very least, there are "sufficiently serious questions going to the merits of its claims to make them fair ground for litigation." *Otoe-Missouria Tribe of Indians*, 769 F.3d at 110.

b. <u>Geneseo breached its contract with Plaintiff and violated the covenant of good faith and fair dealing by failing to follow its own university policies and procedures.</u>

Under New York law, "an implied contract is formed when a university accepts a student for enrollment: if the student complies with the terms prescribed by the university and completes the required courses, the university must award him a degree." *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011) (citing *Carr v. St. John's Univ.*, 17 A.D.2d 632, 633 [2d Dep't], *aff'd*, 12 N.Y.2d 802 [1962]). The terms of the implied contract are "contained in the university's bulletins, circulars and regulations made available to the student." *Id.* (quoting *Vought v. Teachers Coll., Columbia Univ.*, 127 A.D.2d 654, 654 [2d Dep't 1987]). "Implicit in the contract is the requirement that the institution 'act in good faith in its dealing with its students.'" *Papelino*, 633 F.3d at 93 (quoting *Olsson v. Bd. of Higher Educ.*, 49 N.Y.2d 408, 413–14 [1980]). At the same time, "the student must fulfill [his] end of the bargain

by satisfying the university's academic requirements and complying with its procedures." *Id.* (quoting *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206 [S.D.N.Y. 1998]). If the terms of the implied contract are "contained in the university's bulletins, circulars and regulations made available to the student" (*Papelino*, 633 F.3d at 93). Of course, "[i]mplicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance." *Dalton v. Educational Testing Service*, 87 N.Y.2d 384, 389 (1995).

In this case we find those terms and conditions in Geneseo's Title IX Grievance Policy, Sexual Violence Response Policy, and its Student Code of Conduct all which are published to the entire student body. (*See* Doe Decl. Exhs. H-J). These policies prescribe a code-like set of terms binding on the administration. Simply put, Geneseo must follow its own rules, and its failure to do so is a breach of contract and a breach of the implied covenant of good faith and fair dealing.

Plaintiff incorporates the arguments detailed in the above section outlining the violation of his due process rights. In addition to due process violations, Geneseo's failure to follow its own policies is a breach of contract and a breach of the covenant of good faith and fair dealing with plaintiff, a student at Geneseo.

Based on the separate and distinct breaches of the contract, the plaintiff has demonstrated a likelihood of success on the merits or, at the very least, there are "sufficiently serious questions going to the merits of its claims to make them fair ground for litigation." *Otoe-Missouria Tribe of Indians*, 769 F.3d at 110.

> 3. **The Balance of Equities Weighs in Plaintiff's Favor and Injunctive Relief is in the Public Interest.**

The harm to John Doe in the absence of a temporary restraining order and injunction is plain (as described above).

Equally plain is that defendants stand to suffer no harm—none—if the injunction and TRO are granted. Defendants will be made simply to allow its student to resume classes, as he was doing all semester prior to these events, and for which he has already paid the tuition. In other words, defendants will be made to do what it is supposed to be doing already: educate its student. Allowing Doe to resume his courses poses no risk of harm to defendants, Geneseo's students or staff. Indeed, other than a mutual no contact order, Doe was permitted to attend the university without restrictions throughout the investigation, hearing, and appellate process. The balance of equities tilts dramatically away from defendants to the plaintiff. Moreover, the injunction is in the public interest. The conferral of a college education upon a student who has earned it or is in the process of earning it is beneficial enterprise. In contrast, there is no public benefit to excluding a student from his education in derogation of the university's own polices.

## CONCLUSION

For the foregoing reasons, the plaintiff's emergency motion for a temporary restraining order and preliminary injunction should be granted.

Dated: May 2, 2024

E. STEWART JONES HACKER MURPHY LLP

_____
JULIE A. NOCIOLO, ESQ.
Pro Hac Vice Application Pending
*Attorney for Plaintiff John Doe*
28 Second Street
Troy, New York 12180
Tel. (518) 274-5820
jnociolo@joneshacker.com